IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| LOYAL C. CURL, | ) | |
| | ) | |
| Petitioner, | ) | Case No. CV-05-115-S-MHW |
| | ) | |
| v. | ) | **MEMORANDUM ORDER** |
| | ) | |
| RANDY BLADES, ISCI Prison Warden, | ) ) | |
| | ) | |
| Respondents. | ) | |
| _____ | ) | |

Pending before the Court in this habeas corpus case is Respondent's Motion to Dismiss Petition on procedural default grounds (Docket No. 11). Petitioner has filed his Response (Docket No. 15). All parties have consented to the jurisdiction of a United States Magistrate Judge to enter final orders in this case (Docket No. 9). Having reviewed the record in this case, as well as the state court record, and having considered the arguments of the parties, the Court enters the following Order.

MEMORANDUM ORDER  1

# I.

# BACKGROUND

Petitioner was convicted of one count of incest (Idaho Code § 18-6602), for having sexual relations with his natural daughter, Gloria Curl.  His conviction occurred in the Sixth Judicial District Court, in Bannock County, Idaho.  On January 27, 2003, Petitioner was sentenced to ten years' imprisonment, with credit given for time served since July 13, 2001.  *See State's Exhibit A-1*, at p. 100-101.

On direct appeal, Petitioner raised one claim: that the trial court erred in failing to sua sponte order a psychological examination of Petitioner prior to sentencing pursuant to Idaho Code § 19-2522(1) and Idaho Criminal Rule 32.  No citations to the federal Constitution or United States Supreme Court cases are found in Petitioner's appellate brief.  *See State's Exhibit C-1*.  The Idaho Court of Appeals affirmed the conviction and sentence on March 2, 2004.  His petition for review was denied by the Idaho Supreme Court on June 8, 2004.  *See State's Exhibits C-1 to C-7*.

On June 22, 2004, Petitioner filed a state post-conviction relief petition, with various supporting affidavits, in which he raised a large number of claims challenging his conviction.  *See State's Exhibit B-2*.  The state district court summarily dismissed his petition on September 3, 2004.  *State's Exhibit B-11*.  Petitioner did not file an appeal.  *See Affidavit of Lois Dawson* (Docket No. 11, Attachment 2).

Petitioner filed his Petition in the current habeas corpus action in a timely manner.  In the Petition, he raises the following claims: (1) his right to a speedy trial was violated;

MEMORANDUM ORDER  2

(2) his right to use a medical expert and medical evidence to support his defense was violated; (3) his right to understand and assist in his criminal proceedings was violated; and (4) his right to have evidence admitted to support his defense was violated.  The Court will construe these claims as federal claims to the extent possible because of Petitioner's pro se status.

## II.

## MOTION TO DISMISS

**A.     Standard of Law**

Rule 4 of the Rules Governing § 2254 Cases authorizes the Court to summarily dismiss a petition for writ of habeas corpus when "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court."   In such case, the Court construes the facts in a light most favorable to the petitioner.  When a court is considering a motion to dismiss, it may take judicial notice of facts outside the pleadings.  *Mack v. South Bay Beer Distributors*, 798 F.2d 1279, 1281 (9th Cir. 1986).[1]  A court may look beyond the complaint to matters of public record, and doing so does not convert a motion for summary dismissal into a motion for summary judgment.  *Id.*   Accordingly, the Court shall take judicial notice of those portions of the state court record lodged by the parties.

---

[1]*abrogated on other grounds by Astoria Federal Sav. and Loan Ass'n v. Solimino*, 501 U.S. 104 (1991).

MEMORANDUM ORDER  3

A federal habeas petitioner must first exhaust his state court remedies as to all of his constitutional claims before presenting them to the federal court.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  The petitioner can satisfy the exhaustion requirement by showing that (1) he has "fairly presented" his federal claim to the highest state court with jurisdiction to consider it, or (2) that no state court remedy was available at the time he filed in federal court.  *Johnson v. Zenon*, 88 F.3d 828, 829 (9th Cir. 1996) (citations omitted).

To exhaust a habeas claim properly, a habeas petitioner must invoke one complete round of the state's established appellate review process, giving the state courts a full and fair opportunity to correct the alleged constitutional error at each level of appellate review.  *Baldwin v. Reese*, 541 U.S. 27 (2004).  "[O]rdinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  *Id*. at 32.

The mere similarity between a state law claim and a federal claim does not constitute fair presentation of the federal claim.  *See Duncan v. Henry*, 513 U.S. 364, 365-66 (1995).  General references in state court to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are likewise insufficient.  *See Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999).  A habeas petition from a state prisoner "who is proceeding pro se may be viewed more leniently for exhaustion

MEMORANDUM ORDER  4

purposes than a petition drafted by counsel." *Fields v. Waddington*, 401 F.3d 1018, 1021 (9th Cir. 2005).

To show "cause" for a procedural default, a petitioner must ordinarily demonstrate that some objective factor external to the defense impeded his or his counsel's efforts to comply with the state procedural rule at issue. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To show "prejudice," a petitioner bears "the burden of showing not merely that the errors [in his proceeding] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982).

If a petitioner cannot show cause and prejudice for his procedural default, he can still bring the claim in a federal habeas petition if he demonstrates that failure to consider the claim will result in a "fundamental miscarriage of justice," which means that a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Murray v. Carrier*, 477 U.S. at 496. To satisfy this standard, a petitioner must make a colorable showing of factual innocence. *Herrera v. Collins*, 506 U.S. 390, 404 (1993). If a petitioner brings forward new evidence not presented at trial which tends to show his innocence, the Court must then determine whether, "in light of the new evidence, no juror, acting reasonably, would have voted to find [the defendant] guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 329 (1995). Upon such a showing, a petitioner may proceed with his claims, provided that his claim of actual

innocence is accompanied by an assertion of nonharmless constitutional error at trial. *Id.* at 316.

**B.   Discussion**

    1.   <u>Claim One: Right to Speedy Trial</u>

Petitioner's first claim is that his Sixth Amendment right to a speedy trial was violated. Petitioner was first arrested on July 13, 2001. He was incarcerated until November 2001, when he was involuntarily committed to the Blackfoot state mental hospital. He was released from the mental hospital on a writ of habeas corpus on or about February 6, 2002. He was then arrested again. On July 8, 2002, Petitioner was charged with infamous crime against nature involving Gloria Curl, Petitioner's natural daughter. The charge was amended on July 29, 2002, to allege that incest with Gloria Curl occurred between January 1, 2001, and May 31, 2001. *State's Exhibit A-1*, at 41. Petitioner entered a not guilty plea on August 12, 2002.

A jury trial was set for September 24, 2002. The prosecutor and Petitioner's counsel stipulated that the trial would be vacated and reset to November 26, 2002. Petitioner moved the Court to allow a physician to examine him. The court granted the motion and the trial was moved to December 4, 2002. Petitioner's trial ended on December 5, 2002, with a jury finding him guilty of incest. *See State's Exhibit B-11*, at p. 3; *State's Exhibit A-1*, at pp. 56-64, 71, 82-84, & 90.

Petitioner pursued a direct appeal, but the speedy trial claim was not included in the direct appeal. Petitioner filed a post-conviction petition, but he did not appeal its

MEMORANDUM ORDER 6

dismissal. As a result of Petitioner's failure to present the speedy trial claim to the Idaho Supreme Court in a procedurally proper manner (or at all), the claim is now procedurally defaulted because it is too late to bring the claim in state court.

To prevail on a speedy trial claim, Petitioner must show that the balance of the following factors tips in his favor: (1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *Stuard v. Stewart*, 401 F.3d 1064 (9th Cir. 2005) (petitioner not entitled to habeas corpus relief on his assertion that it was unconstitutional for the trial court to make him choose between a speedy trial and a better opportunity for trial preparation by his defense attorney).

Because Petitioner's claim is procedurally defaulted, he cannot proceed in federal court on this claim unless he shows cause and prejudice, as explained below. The Court will provide Petitioner with an additional period of time in which to submit briefing, affidavits, and exhibits to support a showing of cause and prejudice.

2. <u>Claim Two: Right to Use Medical Expert and Evidence to Support his Defense</u>

Petitioner, age 74, was first arrested on July 13, 2001, and the Doppler penile test to determine whether he could get an erection was performed over one year later in October 2002. Petitioner asserts that if he had been examined by a doctor and had the penile erection test shortly after he was arrested, the test would have shown that he was unable to get an erection and therefore unable to have sex with Gloria between January

MEMORANDUM ORDER  7

and March 2001.  He asserts that, in 2001, his public defender, Randy Shulthies, did not want him to have this evidence because Mr. Shulthies' friend was "shacking up with [Petitioner's] wife Gloria."  *Petition*, at p. 2 (Docket No. 3).

Petitioner failed to bring this claim before the Idaho Supreme Court.  As a result, it is procedurally defaulted.  The Court cannot adjudicate the merits of this claim unless Petitioner shows cause and prejudice to excuse its default.

It is unclear whether Petitioner is also asserting that the state district court prevented him from presenting medical expert testimony and medical evidence at trial.  Such an allegation is not supported by the record.  Petitioner's counsel arranged for the Doppler penile test with Dr. Taylor.  The State filed a Motion in Limine to prevent its introduction into evidence at trial.  The State argued that it had no relevance to the current charges, arising from incidents in January through March of 2001, when the test was performed in October 2002.  The State argued that the fact that he could not get an erection in 2002 had nothing to do with whether he could have gotten one in 2001, a year and a half earlier.  Petitioner's counsel argued that the test showed that there were problems with Petitioner's arteries and veins in his penis, and those could not have occurred overnight, and thus the test was relevant.  Petitioner's counsel admitted that Dr. Taylor could not opine that Petitioner was unable to get an erection in January through May 2001.  After oral argument, the court decided to hear the doctor's testimony outside the presence of the jury to determine relevance.  *State's Exhibit A-2*, pp. 52-62.  After the

MEMORANDUM ORDER  8

court heard the doctor's testimony in camera, the court decided to allow Dr. Taylor to testify. *State's Exhibit A-2*, at pp. 316-337.

Dr. Taylor testified before the jury, and his report of Petitioner's penile test was admitted into evidence without objection. *Id*. at p. 344. Dr. Taylor testified that it was a very reliable test. He further testified that Petitioner had two different problems that led to his inability to get an erection, artery problems and vein problems. The doctor testified that, in his opinion, Petitioner was not able to get an erection during the time period for which Petitioner was charged. Dr. Taylor also testified that, because the condition usually occurs over a period of months or years, he believed it was unlikely that Petitioner had been able to get an erection in 2001. *Id*. at 338-348.

Based on the foregoing, the Court finds that Petitioner has failed to show that he was unable to present medical testimony or records at his trial, if that is his claim. Petitioner has not specified what medical testimony or records he was unable to bring, or how it caused his prejudice. Should Petitioner have anything additional to bring forward to show cause and prejudice, he may brief that issue according to the schedule set forth below.

       3.      <u>Claim Three: Right to Understand and Assist in Criminal Proceedings</u>

Petitioner's third claim is that he was deprived of the right to understand and assist in criminal proceedings because of mental illness. The background of this claim is as follows.

MEMORANDUM ORDER  9

On July 9, 2001, Gloria Curl first reported that her father, Petitioner Loyal Curl, had been raping and sexually assaulting her for a period of 27 years, and that he had fathered her three children, Jane, Gene, and Joan. At that time, she indicated to investigators that she had forced Petitioner to leave their home, had filled out paperwork for a protection order, and was "working with Bill Bird to get her father committed due to a mental illness." *State's Exhibit A-1*, at p. 11. The police investigative report notes that the investigative file contained a photocopy of an "order for emergency [commitment] to a facility to await hearing, signed by Judge Murray," and an "order to transport, in the name of Loyal Curl, also signed by Judge Murray, on 6-29-01." *Id.* at p. 13. The file also contained "one affidavit in support of involuntary mental commitment, in the name of Loyal Curl, consisting of five pages, signed by Gloria Curl." *Id.* at p. 14.

It appears that Petitioner was first arrested on July 13, 2001. *State's Exhibit A-1*, at p. 33. He entered the mental hospital on November 27, 2001. The record contains no information about what transpired between July and November 2001, other than the record reflects that Petitioner was incarcerated at the Bannock County Jail during that period of time.

Petitioner has presented a discharge report from Blackfoot State Hospital showing that he was hospitalized there from November 27, 2001, through February 6, 2002. *See Attachments to State's Exhibit B-2*. He had a diagnosis of multi-infarct dementia. *Id.* The report also states:

MEMORANDUM ORDER  10

> Because of his ongoing dementing process, it was felt that he was not able to return to trial but subsequently he did go to court and his commitment was converted to a 66-329k and he was dispositioned to Syringa Chalet Nursing Facility for continuing care and observation. The patient was not placed on any psychiatric medications during the course of his hospital stay.

*Id*.

Idaho Code § 66-329(k) provides that if, after an involuntary commitment hearing, the court finds by clear and convincing evidence that the proposed patient is mentally ill, and is likely to injure him/herself or others or is gravely disabled due to mental illness, the court shall order the proposed patient committed to the Director of the Department of Health and Welfare for a period of time not to exceed one year.  Petitioner asserts that he won his freedom from the commitment by filing a habeas corpus petition. *Affidavit of Petitioner*, at pp. 3 & 10 (Docket No. 10).

There is virtually nothing in the record regarding the legal proceedings surrounding Petitioner's commitment and release.  In its motion for summary dismissal of the state post-conviction case, the State outlined the mental health proceedings as follows:

> The defendant's mental status has been the subject of a variety of prior court hearings, and as such, defendant is not entitled to post conviction relief.
>
> Perhaps the most troubling allegation of the post conviction relief petition is the suggestion that the defendant was not competent to stand trial because of mental illness or defect.   The defendant goes into his personal history at length, indicating that he has suffered from brain damage since World War II.  While this may be true, the defendant's petition is really nothing more than a request to re-litigate issues which have already been decided against him.  A

MEMORANDUM ORDER  11

> review of the court file will indicate that the defendant spent a substantial amount of time in the mental institution at Blackfoot before being judged ready to stand trial. The court's file contains about one-quarter inch of legal documents which indicate that these allegations of incapacity were fully litigated and decided prior to trial beginning.

*State's Exhibit B-9*, at p. 4.

Petitioner presented this claim or a similar claim to the state district court on post-conviction review. During that action, Petitioner had the assistance of the Bannock County Public Defender. In that proceeding, Petitioner's trial counsel, Manuel Murdoch, submitted an affidavit that stated that "Mr. Curl seemed very aware. . . responded to questions . . . reacted to evidence presented, and conversed with me intelligently. . . ." *State's Exhibit B-11*, at p. 9. The state district court found that "Petitioner fail[ed] to present any evidence that he was unable to understand the court proceedings and needed a psychiatrist." The Court summarily dismissed the post-conviction action. *Id.*

Because Petitioner did not appeal the dismissal, he deprived the Idaho Supreme Court of the opportunity to review this claim. As a result, this claim is procedurally defaulted. Petitioner shall be given an opportunity to show cause and prejudice to excuse the default of this claim. Respondent shall be required to supplement the current State Court Record with records from court proceedings from commitment through the finding that he was competent to stand trial.

MEMORANDUM ORDER 12

      4.      <u>Claim Four: Right to Have Evidence Admitted to Support his Defense</u>

Petitioner's fourth claim is as follows: "I gave the court my papers of evidence and they refused it, and they used Gloria's testimony, but they did not allow me to speak, and they shoved my papers of evidence back to me and said, 'I [have] seen that!,' with a sarcastic voice and hate and prejudice." Petitioner has not outlined which papers he gave to the court; neither does the record reflect that the court prevented him from testifying. Petitioner did not properly exhaust this claim through the level of the Idaho Supreme Court. Therefore, the claim is procedurally defaulted. As a result, the Court cannot hear the claim unless Petitioner shows cause and prejudice to excuse its default.

      5.      <u>Actual Innocence</u>

If a petitioner cannot show cause and prejudice for his procedural default, he can still bring the claim in a federal habeas petition if he demonstrates that failure to consider the claim will result in a "fundamental miscarriage of justice," which means that a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Murray v. Carrier*, 477 U.S. at 496. To satisfy this standard, a petitioner must make a colorable showing of factual innocence. *Herrera v. Collins*, 506 U.S. 390, 404 (1993). If a petitioner brings forward new evidence not presented at trial which tends to show his innocence, the Court must then determine whether, "in light of the new evidence, no juror, acting reasonably, would have voted to find [the defendant] guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 329 (1995). Upon such a showing, a petitioner may proceed with his claims, provided that his claim of actual

MEMORANDUM ORDER  13

innocence is accompanied by an assertion of nonharmless constitutional error at trial.  *Id.* at 316.

After a review of the record, the Court concludes that Petitioner has failed to show that he is actually innocent.  The jury evaluated Dr. Taylor's report and opinion that Petitioner probably could not have gotten an erection between January and March of 2001, but the jury obviously rejected that evidence.  Dr. Taylor's report and opinion are not definitive evidence that Petitioner is innocent; Dr. Taylor could not state for certain that Petitioner could not have gotten an erection during the pertinent time period.  Petitioner has brought forward nothing showing that Gloria Curl is not his natural daughter, as he asserts, or that the acts complained of did not occur.  As a result, the Court rejects an actual innocence claim to excuse procedural default.

## II.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Respondent's Motion for Summary Dismissal (Docket No. 11) is CONDITIONALLY GRANTED.  Petitioner shall have until **May 31, 2006**, in which to file a brief, with or without supporting affidavits and exhibits, showing cause and prejudice to excuse the default of his claims.  Respondent may file a response brief, and Petitioner may file a reply if he desires.

IT IS FURTHER HEREBY ORDERED that on or before **May 31, 2006**, Respondent shall lodge with the Clerk of Court the state court records from court

proceedings from commitment through the finding that Petitioner was competent to stand trial.



DATED: **March 13, 2006**

_____
Honorable Mikel H. Williams
United States Magistrate Judge